**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

SHAUN GARVEY,

                               **Plaintiff,**

   vs.                                                     5:17-CV-01257
                                                                      (MAD/TWD)

WEGMANS,

                               **Defendant.**

---

**APPEARANCES:**                               **OF COUNSEL:**

**SHAUN GARVEY**
P.O. Box 12
Liverpool, New York 13090
Plaintiff *pro se*

**HARTER SECREST & EMERY**          **ROBERT C. WEISSFLACH, ESQ.**
Buffalo Office
50 Fountain Plaza, Suite 1000
Buffalo, New York 14202-2293
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

*Pro se* Plaintiff Shaun Garvey ("Plaintiff") commenced this action on November 15, 2017, against his former employer Interactions Consumer Experience Marketing, Inc. ("Interactions") pursuant to the Americans with Disability Act ("ADA"). *See* Dkt. Nos. 1, 2. On April 10, 2018, Plaintiff filed a Third Amended Complaint in which he added the allegations of sex discrimination in violation of Title VII of the Civil Rights Act of 1964 against Interactions and a new party in this action, Wegmans Food Market, Inc. ("Wegmans"). *See* Dkt. No. 22. On

August 14, 2018, Plaintiff filed a letter motion to dismiss the case against Interactions, which was granted by the Court. *See* Dkt. Nos. 37, 38.

Currently before the Court is Defendant Wegmans' motion to dismiss Plaintiff's Third Amended Complaint. *See* Dkt. Nos. 36.

## II. BACKGROUND

Plaintiff worked for Interactions as a brand ambassador from 2014 until March 2016 when his employment was terminated. *See* Dkt. No. 22-1 at 2. Wegmans is a client of Interactions. *See id.* at 2-3. Plaintiff claims that Wegmans is not his "full" or "first" employer, but it is his "secondary employer." *See* Dkt. No. 22 at 7. Plaintiff claims to have anxiety and panic disorders, and that he had three medical episodes while working at Wegmans stores located in Fayetteville, Auburn, and Johnson City. *See* Dkt. No. 22-1 at 2. Sometime after these medical episodes, Wegmans requested Plaintiff not to return to its stores, and Plaintiff's employment with Interactions was terminated. *See id.* at 3. Plaintiff believes that he suffered discrimination based on his disability. *See id.* at 1.

Upon his termination, Plaintiff filed one claim against Interactions and two claims against Wegmans with the New York State Division of Human Rights ("NYSDHR") claiming employment discrimination based on disability, which was also cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Dkt. No 22-1; Dkt. No 22-2; Dkt. No. 36-10 at 7. In his Third Amended Complaint, Plaintiff only attached the NYSDHR's determination against Interactions, but it does make reference to the two cases (#10181618 and #10181619) that Plaintiff filed against Wegmans. *See* Dkt. No. 22-1 at 4. Both NYSDHR disability discrimination complaints against Wegmans resulted in finding of "Probable Cause." *See id.*; Dkt. No. 36-6 at 1, 14.

2

During the course of NYSDHR's investigation, Mr. Clark, a grocery customer service associate who works as a "stocker" at Wegmans in Auburn, lodged a complaint against Plaintiff in which he stated being uncomfortable around Plaintiff after Plaintiff allegedly came in the bathroom and said, "I thought you were naked." Dkt. No. 22 at 6. Mr. Clark also stated that Plaintiff "would stare at him and he would ask him 'can I help you out.'" *Id*. Mr. Clark maintains that "he was not aware of [Plaintiff's] sexual orientation, but he was uncomfortable," so he reported the incident to his manager. *Id*. During NYSDHR's investigation, Wegmans stated that they requested Plaintiff not to return to the Auburn store due to the "issue in the bathroom," and "this had nothing to do with [Plaintiff's] illness or his medical attention." Dkt. No. 36-6 at 16. Wegmans maintains that "management had to provide a safe environment for their employees" and "after it was determined that [Plaintiff] was inappropriate, the determination was to request that he be pulled from [Wegman's] account." *Id.* at 3, 16.

Plaintiff denies the bathroom incident and any other sexual misconduct. *See* Dkt. No. 22 at 6. He claims that Wegmans just brought these allegations to discredit him during NYSDHR proceedings and to try to justify his termination. *See id*. In his Third Amended Complaint, Plaintiff alleges that Wegmans falsely accused him of sexual misconduct and that it failed to properly investigate the sexual accusation against him in violation of Tile VII. *See id.* at 1-4.

Wegmans has moved to dismiss Plaintiff's Third Complaint on three grounds. *See* Dkt. Nos. 36, 36-10. First, Wegmans asserts that Plaintiff's claims are barred by the Confidential Settlement Agreement and General Release, which was signed by Plaintiff on February 24, 2017. *See* Dkt. No. 36-10 at 11-13; Dkt. No. 36-7. Second, Plaintiff failed to state a claim for gender discrimination under Title VII. *See* No. 36-10 at 13-14. Lastly, Plaintiff's claim is time barred and Plaintiff has not exhausted administrative remedies. *See id.* at 14-16.

3

**III. DISCUSSION**

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002).

**B.    Plaintiff's Claims Are Bared by the Confidential Settlement Agreement and General Release of All Claims**

The Supreme Court has held that "an employee may waive his cause of action under Title VII as part of a voluntary settlement." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974). The court must determine if "the employee's consent to the settlement was voluntary and knowing." *Id.* at 52 n.15. To determine if a settlement agreement releasing Title VII claims is voluntary and knowing, we apply the "'totality of the circumstances' test." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir. 1998). This inquiry includes the following factors:

> "1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law."

5

*Id.* (quotation omitted). Courts have also considered "whether the employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so." *Id.* (citation omitted).

In the present matter, the language and terms of the settlement agreement are clear. *See* Dkt. No. 36-7.[1] The document is called "Confidential Settlement Agreement and General Release of All Claims" and it clearly states that the parties to the agreement are Shaun Garvey and Wegmans Food Markets, Inc. *See id.* at 1. Under the section titled "COMPLETE WAIVER AND RELEASE," Settlement Agreement states as follows:

> Mr. Garvey . . . does hereby forever discharge and release
> Wegmans . . . from any and all claims, demands, causes of action,
> and complaints (collectively called "claims"), that he now has or
> may in the future have, or which any person or entity may have on
> his behalf, on account of or arising out of any matter or thing that
> has happened, developed or occurred before the date of this
> agreement.

*Id.* at ¶ 2a. Further, the settlement agreement specifically states that "[t]his release, discharge and waiver includes . . . any: claims arising out of or under . . . Title VII of the Civil Rights Act of

---

[1] Although the Court is generally limited to the facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion to dismiss into one for summary judgment. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Telegraph Co.*, 62 F.3d 69, 72 (2d Cir. 1995). The Court may also consider any document integral to the complaint. *See id.* The "Confidential Settlement Agreement and General Release of All Claims" was made part of the record before the NYSDHR, *see* Dkt. No. 36-9, and is properly considered in deciding the pending motion to dismiss. *See Hewett v. Leblang*, No. 12 Civ. 1713, 2012 WL 2820274, *6 (S.D.N.Y. July 5, 2012) (holding that the settlement agreement submitted to the EEOC was properly considered by the court in deciding a motion to dismiss); *Brown v. Donahoe*, No. 12-3086, 2014 WL 652277, *4 (W.D. Tenn. Feb. 19, 2014) (holding that the court could consider the EEOC documents and settlement agreement attached to the motion to dismiss because they are central to the plaintiff's claims and are public records) (citation omitted).

1964, . . . [and] any other federal, state, county, or municipal law providing a cause of action related to employment or discrimination." *Id.* at ¶ 2b.

The sexual misconduct allegations against Plaintiff occurred sometime before November 14, 2016, when the NYSDHR investigations were concluded, and Plaintiff signed the Settlement Agreement on February 24, 2017. *See* Dkt. No. 36-6 at 15; Dkt. No. 36-7 at 5. Therefore, the language of the Agreement is clear that Plaintiff completely discharged Wegmans of any and all claims arising out the NYSDHR investigations including related to any statement or allegations of sexual misconduct because they arose "out of any matter or thing that has happened, developed or occurred before the date of this agreement." *See* Dkt. No. 36-7 at ¶ 2b. In addition, the Agreement is clear that Plaintiff specifically released Wegmans of any claims

arising out of under Title VII, which is the cause of action brought against Wegmans in this matter.

Further, Wegmans advised Plaintiff to consult with an attorney before signing the Agreement. *See* Dkt. No. 36-7 at ¶ 4. Also, Plaintiff had twenty-one calendar days from the date he received the agreement to accept the terms. *See id.* at ¶ 16.

Additionally, the Court notes that Plaintiff has not disputed the validity of the Settlement Agreement and has not claimed that he entered into the Agreement involuntarily or unknowingly. *See* Dkt. No. 22. In fact, by signing the Settlement Agreement, Plaintiff has declared that he signed it voluntarily and without pressure. *See id.* at ¶ 12. Further, as result of the Agreement, Plaintiff withdrew both claims that he had filed against Wegmans with the NYSDHR and EEOC. *See* Dkt. No. 36-8. Therefore, the Court finds that Plaintiff voluntarily and knowingly entered into the Settlement Agreement with Wegmans, and that the language of the Settlement Agreement

clearly precludes Plaintiff from asserting his discrimination claim under Title VII against Wegmans. "Once an individual executes a valid settlement agreement, he cannot subsequently seek both the benefit of the agreement and the opportunity to pursue the claim he agreed to settle." *Reidy v. Runyon*, 971 F. Supp. 760, 764 (S.D.N.Y. 1997).

Accordingly, the Court grants Defendant's motion to dismiss.

**C.      Plaintiff Failed to State a Claim for Gender Discrimination under Title VII**

Even assuming Plaintiff's claim was not barred by the Settlement Agreement, the Court finds that the complaint does not plausibly allege a claim for sex discrimination under Title VII. Discrimination claims under Title VII are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). It is the plaintiff's burden to plausibly allege a prima facie case of discrimination. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001); *Lewis v. Erie Cnty. Med. Ctr. Corp.,* 907 F. Supp. 2d 336, 346 (W.D.N.Y. 2012). A prima facie case of discrimination consists of four elements the plaintiff must allege: "(1) [he] falls within a protected class, (2) [he] was performing [his] duties satisfactorily, (3) [he] was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." *Lewis*, 907 F. Supp. 2d at 346.

"However, to survive a motion to dismiss, 'a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated.'" *Wolfinger v. Consol. Edison Co. N.Y., Inc.*, No. 17-CV-1710, 2018 WL 3637964, *8 (E.D.N.Y. July 31, 2018) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2016)); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Rather, "to defeat a motion to dismiss ...

in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86; *see also Zarda v. Altitude Express. Inc.*, 883 F.3d 100, 118 (2d Cir. 2018) (en banc).

In the present matter, Plaintiff does not claim that he was discriminated against or treated differently because of his sex or sexual orientation. *See* Dkt. No. 22. Although Plaintiff suffered an adverse action by having his employment terminated, Plaintiff does not claim that his sex or sexual orientation was a motivating factor. *See id*. Instead, the record consistently shows that Plaintiff claims and believes that his employment was terminated because of a disability, *i.e.*, his anxiety and panic disorder. *See* Dkt. Nos. 22, 36.

Plaintiff does claim that he was falsely accused of sexual misconduct and that Wegmans failed to properly investigate this accusation. *See* Dkt. No. 22 at 1-4. Although Plaintiff alleges that he was falsely accused because of his sex or sexual orientation, he fails to allege that the subsequent inadequate investigation was motivated by such inappropriate considerations. Courts have consistently held that an allegation of being falsely accused of sexual misconduct alone does not establish a claim for sex discrimination under Title VII. *See Balazs v. Liebenthal*, 32 F.3d 151, 155 (4th Cir. 1994) ("An allegation that he was falsely accused of conduct which, if true, might have given rise to a claim of employment discrimination based on sex by someone else in no way states a cause of action that plaintiff himself was a victim of discrimination based on his sex"); *Matlosz v. J.P. Morgan Chase*, No. 03 Civ. 6235, 2005 WL 2242196, *7 (S.D.N.Y. Sept. 3, 2005).

Accordingly, the Court finds that Defendant is entitled to dismissal on this alternative ground.

### D. Plaintiff Did Not Exhaust His Administrative Remedies

Filing a charge with the EEOC is "an essential element" of a Title VII claim and a prerequisite to bringing suit in federal court. *See Butts v. City of N.Y. Dep't of Hous.*, 990 F.2d 1397, 1402 (2d Cir. 1993), *abrogated by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care*, 163 F.3d 684 (2d Cir. 1998); *see also Francis v. City of N.Y.*, 235 F.3d 763, 767–68 (2d Cir. 2000); 42 U.S.C. § 2000e–5(e). Jurisdiction is conferred if a claim was previously raised in an EEOC charge or if the federal claim is "reasonably related" to such a claim. *See Butts*, 990 F.2d at 1401–02. A claim is "reasonably related" to one raised in an EEOC charge (1) when it falls within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge;" (2) where the claim alleges retaliation for filing the EEOC charge, and it would likely be discovered during the EEOC investigation; and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402–03 (citations omitted).

"In determining whether a particular claim is reasonably related to the plaintiff's EEOC complaint, '[w]e look not merely to the four corners of the often inarticulately framed charge, but take into account the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gomes v. Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir. 1992) (quotation omitted). This loose pleading standard has subsequently been limited to instances where the facts stated in the EEOC claim could have reasonably been expected to alert the EEOC to an additional, unstated claim. *See McKinney v. Eastman Kodak Co.*, 975 F. Supp. 462, 467 (W.D.N.Y. 1997) (failing to find reasonable relatedness between disparate impact and retaliation claims when the employee claimed she was discharged in retaliation for previous complaints but did not allege any facts describing the process that employer implemented in deciding to

10

terminate its employees). The focus is not necessarily on the specific claims charged with the EEOC, but rather "'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)). While EEOC claims need not be artfully pleaded, they must state more than "vague, general allegations" to satisfy the EEOC exhaustion requirement. *Butts*, 990 F.2d at 1403.

In the present matter, Plaintiff filed two complaints against Wegmans with NYSDHR claiming employment discrimination based on disability, which was also cross-filed with EEOC. *See* Dkt. No. 22-1; Dkt. No. 22-2; Dkt. No. 36-10 at 7. In these complaints, Plaintiff alleges that he "suffers from anxiety and panic disorder;" he did not receive accommodations; he had three medical episodes while working at Wegmans stores; and "due to the medical incidents, [Wegmans] requested that he no longer work in their stores." Dkt. No. 36-6 at 2-3, 15-16. Plaintiff has never claimed that he was discriminated against, treated differently, or harassed while working at Wegmans stores due to his sex or sexual orientation. *See id.* Plaintiff did not state any fact that could have reasonably been expected to alert the EEOC to an unstated claim related to sex discrimination. *See* Dkt. No. 36-6; *Herzog v. McLane Ne.*, 999 F. Supp. 274, 276 (N.D.N.Y. 1998) ("[T]he Court cannot find that Plaintiff's Title VII claim [based on sex discrimination] is reasonably related to her ADA claim"). Further, even if we assume, *arguendo*, that Plaintiff's disability and sex discrimination claims were reasonably related, on or about February 24, 2017, Plaintiff withdrew his ADA charges with the EEOC against Wegmans as a result of their Settlement Agreement. *See* Dkt. No. 36-8 at 2. Therefore, even if Plaintiff had a claim for sex discrimination, he has not exhausted his administrative remedies.

**IV. CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated above, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 36) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: November 14, 2018.
    Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge